RENDERED: JANUARY 20, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0928-ME

KEN LAWON FLINTROY                                                          APPELLANT

v.          APPEAL FROM JEFFERSON CIRCUIT COURT
            HONORABLE BRYAN D. GATEWOOD, JUDGE
            ACTION NO. 21-D-500694-002

KARINA DEJESUS GALLEGOS-
ESPARZA                                                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, EASTON, AND McNEILL, JUDGES.

McNEILL, JUDGE: Ken Lawon Flintroy ("Flintroy") appeals from a domestic

violence order ("DVO") entered by the Jefferson Circuit Court. Finding no error,

we affirm.

On March 22, 2021, Karina DeJesus Gallegos-Esparza ("Gallegos-

Esparza") filed a domestic violence petition in Jefferson Circuit Court seeking an

emergency protective order ("EPO") against Flintroy. The court denied the request for an EPO and issued a summons and set the matter for a hearing. Flintroy and Gallegos-Esparza both appeared *pro se* at the hearing and testified. In addition, Gallegos-Esparza adopted the statements in her petition as her testimony.

According to the petition, on March 9, 2021, Flintroy was attempting to exchange the parties' child following visitation when he realized Gallegos-Esparza was not at home. After leaving the child with her mother, Flintroy sat outside Gallegos-Esparza's home to wait for her to arrive. He later called her, telling her that he had seen her return and had followed her friend home. Flintroy began to threaten Gallegos-Esparza saying that he knew where she lived and "watch and see." The petition further alleged that Flintroy shows up at her house on non-visitation days demanding to know where she has been and is "extremely aggressive and physically intimidating with his body [and] hand gestures[.]" Gallegos-Esparza claimed she is afraid of him and that his behavior had recently "escalated in aggression."

At the hearing, Gallegos-Esparza added that although Flintroy has not threatened to harm her directly yet, he has told her that he is not going to let her go, and that she is his, even though they have been separated for a year. Flintroy denied these allegations, stating that he had never threatened Gallegos-Esparza or been physical with her. Following the evidence, the trial court issued a six-month

DVO against Flintroy, restraining him from contacting Gallegos-Esparza. Flintroy then moved to alter, amend, or vacate the DVO, arguing he was denied a meaningful opportunity to be heard and the finding that domestic violence had occurred was not supported by substantial evidence. The trial court denied the motion and this appeal followed.

The standard of review for factual determinations in a DVO is whether the family court's finding of domestic violence was clearly erroneous. *Caudill v. Caudill*, 318 S.W.3d 112, 114 (Ky. App. 2010) (citations omitted). "Findings are not clearly erroneous if they are supported by substantial evidence." *Id.* at 114-15 (citation omitted). We review the entry of a DVO for abuse of discretion. *McKinney v. McKinney*, 257 S.W.3d 130, 133 (Ky. App. 2008). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.*

Flintroy first argues the trial court's finding of domestic violence was not supported by substantial evidence and the entry of the DVO was an abuse of discretion. We disagree. Following a hearing, a court may issue a DVO if it "finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur[.]" KRS[1] 403.740(1). "Domestic violence and abuse" means "[p]hysical injury, serious physical injury, stalking, sexual abuse, strangulation,

---

[1] Kentucky Revised Statutes.

assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members or members of an unmarried couple[.]" KRS 403.720(2)(a). "The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence." *Caudill*, 318 S.W.3d at 114.

Although unclear from the record, the trial court's finding of domestic violence appears to be based either upon fear of imminent physical injury or stalking, as there was no evidence of actual physical injury. On its docket order, the trial court found "[Flintroy] is verbally aggressive with [Gallegos-Esparza]. He blows up her phone – [she] blocks him – he blows up her mother's phone re[garding] visitation w[ith] child. She feels threatened by his yelling [and] screaming [and] backing up to her[.]" However, we may affirm a lower court for any reason supported by the record. *Kentucky Farm Bureau Mut. Ins. Co. v. Gray*, 814 S.W.2d 928, 930 (Ky. App. 1991). In a case with almost identical facts, a panel of this Court affirmed the entry of a DVO, finding there was substantial evidence appellant's conduct caused appellee to fear imminent physical injury.

In *Hohman v. Dery*, 371 S.W.3d 780 (Ky. App. 2012), Dery filed a DVO petition, alleging that Hohman, the father of her child, followed her current boyfriend as he left her house, drove up and down her boyfriend's street, and

contacted her several times a day via phone using derogatory language. The petition further alleged that Hohman became aggressive when discussing visitation with the child, causing her to fear for her safety. At a hearing, Dery testified that she felt threatened when they met to discuss the child because Hohman clenched his fists, gritted his teeth, and yelled at her. Dery described Hohman as "scary" and unable to control his emotions. She stated she was afraid his behavior would escalate "to the next level."

Following the hearing, the trial court entered a one-year DVO. On appeal, this Court ruled the trial court's finding of domestic violence was supported by substantial evidence, noting the court, as factfinder, was in the best position to judge the evidence:

> Despite [Hohman]'s assertions to the contrary, [Dery] specifically testified she felt threatened when he clenched his fists and yelled at her through gritted teeth. [Dery] explained that she believed [Hohman] was unable to control his emotions and that she feared his aggressive confrontations would escalate 'to the next level.' . . .
>
> We reiterate that the family court is in the best position to judge the credibility of the witnesses and weigh the evidence presented. . . . Based on the record, we conclude the evidence presented was sufficient for the court to reasonably infer that [Hohman]'s conduct caused [Dery] to fear imminent physical injury; accordingly, the court's finding of domestic violence was not clearly erroneous.

*Id*. at 782-83.

-5-

Similarly, here, there was sufficient evidence for the trial court to reasonably infer that Flintroy's conduct caused Gallegos-Esparza to fear imminent physical injury. The petition alleged that Flintroy is "extremely aggressive and physically intimidating with his body [and] hand gestures," that Gallegos-Esparza is afraid of him, and that his behavior had recently "escalated in aggression." Gallegos-Esparza sought the protective order so that Flintroy "doesn't end up physically hurting [her]."

Additionally, there was sufficient evidence of stalking to support a finding of domestic violence.

> [F]or an individual to be granted [a DVO] for stalking, he or she must at a minimum prove by a preponderance of the evidence that, an individual intentionally engaged in two or more acts directed at the victim that seriously alarmed, annoyed, intimidated, or harassed the victim, that served no legitimate purpose, and would have caused a reasonable person to suffer substantial mental distress, and that these acts may occur again. Additionally, the individual must prove that there was an implicit or explicit threat by the perpetrator that put the victim in reasonable fear of sexual contact, physical injury, or death.

*Halloway v. Simmons*, 532 S.W.3d 158, 162 (Ky. App. 2017) (citations omitted) (giving grounds for IPO for stalking).[2] "The addition of stalking as a basis for

---

[2] Because "stalking" is a recent addition to the definition of domestic violence and undefined in the related statutes, it is appropriate to borrow the definition of "stalking" contained in the similar interpersonal protection order statutes. *See Calhoun v. Wood*, 516 S.W.3d 357, 360 (Ky.

domestic violence expands on what conduct can constitute domestic violence. Whereas before a victim would have to establish a fear of imminent physical injury . . . [stalking only requires] the victim being placed in reasonable fear of physical injury." *Kiser v. Kiser*, No. 2018-CA-000812-ME, 2019 WL 169204, at *5 (Ky. App. Jan. 11, 2019).[3]

Here, there was evidence that on March 9, 2021, Flintroy waited outside of Gallegos-Esparza's home for her to return and then sat watching her home, calling her an hour later, saying that he knew where she lived and "watch and see." This intimidating act served no legitimate purpose as he had already dropped the child off, and reasonably caused Gallegos-Esparza substantial mental distress, and to reasonably fear physical violence. Gallegos-Esparza claimed that "it terrifies me to know that he's just sitting outside the street of my house watching[,]" and, as noted above, she filed the DVO petition so that he "doesn't end up physically hurting [her]." Additionally, Flintroy shows up at her house on non-visitation days demanding to know where she is, repeatedly texts her about seeing their daughter, and is always making threats.

---

App. 2017) ("It appears the purpose and intent behind, and the interpretation of, the DVO statutes are almost identical to that of the IPO statutes."); KRS 456.010(8).

[3] *Kiser* is an unpublished opinion which we cite not as authority but for its persuasive value under Kentucky Rules of Appellate Procedure 41(A).

We note that "Kentucky courts have liberally construed our [domestic violence statutes] in order to afford relief." *Boone v. Boone*, 501 S.W.3d 434, 440 (Ky. App. 2016). "KRS 403.715(1) mandates that the domestic violence statutes be interpreted to '[a]llow victims to obtain effective, short-term protection against further wrongful conduct in order that their lives may be as secure and as uninterrupted as possible[.]'" *Id.* As such, we conclude the trial court's finding of domestic violence, either due to stalking or fear of imminent physical injury, was not clearly erroneous.

Finally, Flintroy argues he was denied due process because he was not allowed to cross-examine Gallegos-Esparza. Following his testimony at the hearing, Flintroy attempted to ask Gallegos-Esparza a question. He began, "so, I'm asking you Karina, and you know, as much as I love both of y'all still, I just – " and the trial court stopped him, saying, "Mr. Flintroy you do not get to ask her direct questions. I'm sorry, you do not get to do that regarding this. We are here today to determine if I am going to enter a domestic violence order or not . . . ." Flintroy argues the trial court cut off his opportunity to question Gallegos-Esparza and therefore he was not given a meaningful opportunity to be heard. We disagree.

"Due process requires, at the minimum, that each party be given a meaningful opportunity to be heard." *Lynch v. Lynch*, 737 S.W.2d 184, 186 (Ky.

App. 1987) (citations omitted). "[A] party has a meaningful opportunity to be heard where the trial court allows each party to present evidence and give sworn testimony before making a decision." *Holt v. Holt*, 458 S.W.3d 806, 813 (Ky. App. 2015) (citation omitted). Here, both parties were allowed to present evidence and give sworn testimony before the trial court made its decision. They were given similar amounts of time and the court asked questions of each.

While Flintroy claims he was denied the opportunity to cross-examine Gallegos-Esparza, in fact, he attempted to make an impassioned plea to Gallegos-Esparza and the trial court, within its discretion, disallowed such. *Perry v. Commonwealth*, 390 S.W.3d 122, 130-31 (Ky. 2012) ("The scope of cross-examination may be reasonably limited when courts are concerned with preventing harassment, prejudice, confusion of the issues, or questioning that is cumulative or only marginally relevant."). Flintroy has not alleged any specific question he was prevented from asking and he was given the same process as Gallegos-Esparza, who asked no questions of him. We find no error.

ALL CONCUR.

BRIEF FOR APPELLANT:                    BRIEF FOR APPELLEE:

Zack McKee                              Amy E. Oliver
Louisville, Kentucky                    Shelbyville, Kentucky